Alexander Lindgren, CA Bar No. 302797
alexander@lloylaw.com
Leslie Lindgren, CA Bar No. 93524
LINDGREN, LINDGREN, OEHM & YOU, LLP
4199 Campus Drive, Fifth Floor
Irvine, CA 92612
Telephone: (949) 509-6577
Facsimile: (949) 509-6599

Kai H. Richter, MN Bar No. 0296545*
krichter@nka.com
Mark E. Thomson, MN Bar No. 0398260*
mthomson@nka.com
NICHOLS KASTER, PLLP
80 South 8th Street, Suite 4600
Minneapolis, MN 55402
Phone: (612) 256-3200
Fax: (612) 338-4878
*pro hac vice application forthcoming

Attorneys for Plaintiffs and the Class

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Kristopher Baylog and Misael Marrero, individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>    v.<br><br>HashFlare LP,<br><br>        Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT** |

**CLASS ACTION COMPLAINT**

Plaintiffs Kristopher Baylog and Misael Marrero, by their undersigned counsel, on behalf of themselves and the proposed Rule 23 Classes as defined herein, hereby commence this class action suit against Defendant HashFlare LP. Plaintiffs allege as follows:

## **INTRODUCTION**

1.      This is a civil class action against Defendant HashFlare LP ("Defendant" or "HashFlare") seeking monetary and injunctive relief under California and federal law due to Defendant's fraudulent and self-serving cancellation of Plaintiffs' cryptocurrency mining contracts and unregistered sale of securities.

2.      Defendant uses specialized computer hardware to "mine" cryptocurrency. "Mining" cryptocurrency means applying computer power to solve complex equations necessary to verify a group of transactions in that virtual currency, thereby earning new cryptocurrency for the miner. Defendant sells contracts to consumers under which consumers buy a share of Defendant's mining power (and the resulting proceeds) in exchange for an up-front fee and a daily maintenance fee.

3.      Defendant's contracts are securities under the Securities Act of 1933. However, Defendant has not registered these securities with the Securities and Exchange Commission.

4.      Plaintiffs each purchased at least one mining contract from Defendant in August 2017. Among other terms, the contracts specified the price at which consumers could purchase shares of Defendant's computing power. Defendant specifically advertised these as "lifetime contracts" under which consumers could permanently lock in a single price for computing power. The lifetime term of the contract was crucial to Plaintiffs' decision to do business with Defendant.

5.      On August 31, 2017, Defendant upended the contract's terms, announcing that all lifetime contracts would expire on August 31, 2018, and all new contracts would have a one-year term.

**CLASS ACTION COMPLAINT**

6.    Defendant's abrupt announcement is a breach of contract and also violates multiple consumer protection laws.

7.    In furtherance of the public interest, and in order to remedy Defendant's wrongful conduct, Plaintiffs bring this action as a class action, and assert claims on behalf of themselves and the proposed Classes for violations of the California Consumer Legal Remedies Act ("CLRA"), Cal. Civil Code § 1750 *et seq.*; the California False Advertising Law ("CFAL"), Cal. Bus. & Prof. Code § 17500 *et seq.*; the California Unfair Competition Law ("CUCL"), Cal. Bus. & Prof. Code § 17200 *et seq.*; and the Securities Act of 1933, 15 U.S.C. §§ 77e and 77l(a)(1). In addition, Plaintiffs assert claims for unjust enrichment/restitution and anticipatory breach of contract. Plaintiffs seek monetary relief, injunctive relief, attorneys' fees and costs, and other appropriate relief as allowed by law or as appropriate in equity.

## **PARTIES**

8.    Plaintiff Kristopher Baylog is a citizen and permanent resident of the State of California. In August 2017, Mr. Baylog purchased nine separate lifetime contracts with Defendant.

9.    Plaintiff Misael Marrero is a citizen and permanent resident of the State of California. On August 31, 2017, Marrero purchased a lifetime contract with Defendant.

10.    Defendant HashFlare LP is a Scottish company with its principal office located at 44/46 Morningside Road, Edinburgh, Scotland, UK, EH10 4BF. Defendant utilizes the website www.hashflare.io, and its related webpages, to market and sell contracts directly to consumers in California.

## **JURISDICTION AND VENUE**

11.    Jurisdiction arises under 28 U.S.C. § 1331 and, for the pendant state law claims, pursuant to 28 U.S.C. § 1367. In addition, jurisdiction arises under 28 U.S.C. § 1332. Plaintiffs are citizens of the State of California, and Defendant is a citizen of a foreign state. Further, this Court has personal jurisdiction over Defendant because

**CLASS ACTION COMPLAINT**

1    the wrongdoing alleged in this Complaint took place in this state, Defendant

2    systematically and continuously conducts business here, Defendant has sufficient

3    minimum contacts with this state, and Defendant otherwise intentionally avails itself

4    of the markets in this state through the promotion, marketing, and sale of its products

5    in this state, rendering the exercise of jurisdiction by this Court permissible under

6    traditional notions of fair play and substantial justice.

7        12.    Venue is proper in this District because Plaintiffs reside in this District,

8    Defendant conducts business in this District, and a substantial part of the events and

9    omissions giving rise to the claims occurred in this District.

10                                   **FACTS**

11                **A. WHAT IS CRYPTOCURRENCY MINING?**

12        13.    Cryptocurrency is a digital representation of value that can be traded and

13    functions as a medium of exchange, a unit of account, and a store of value.

14    Cryptocurrency generally is not issued or guaranteed by any jurisdiction or

15    government, and its value is decided by consensus within the community of users of

16    the cryptocurrency. Cryptocurrency is distinct from fiat currency, which is money

17    designated by a country as its legal tender (e.g. the United States dollar).

18    Cryptocurrency may be traded on online exchanges for fiat currencies, including the

19    United States dollar, or used to purchase goods and services.

20        14.    Bitcoin, which is the most widely-adopted cryptocurrency, provides a

21    good example of how cryptocurrency works. A record of every Bitcoin transaction is

22    stored in a decentralized system that can be accessed by anyone with appropriate

23    permissions. This record of transactions is routinely updated. However, before new

24    transactions are added to the record, someone must verify that the transactions are

25    legitimate. This verification process is called "mining."

26        15.    To confirm the legitimacy of new Bitcoin transactions, miners must

27    solve complex mathematical problems. Based on that math, a new "block" of

28    transactions is validated and added to the public record about every ten minutes.

**CLASS ACTION COMPLAINT**

Bitcoin miners compete to be the first to confirm a new block of transactions. The first miner to solve the problems, and thus verify a new block, is rewarded with 12.5 newly-generated Bitcoins. Because of the high value of those Bitcoins, mining has become very competitive.[1]

16.    Currently, the only way to reliably profit from Bitcoin mining is to use computer hardware designed for that purpose. This specialized computer hardware is expensive.[2]

17.    The other significant cost of Bitcoin mining is electricity. The computers performing the math necessary to mine Bitcoin use extraordinary amounts of electricity. Thus, Bitcoin mining is more profitable when electricity costs are lower.

## B. HOW DOES DEFENDANT'S BUSINESS WORK?

18.    Because Bitcoin mining requires expensive computer hardware and benefits from cheap electricity, amateur miners have been largely crowded out. Defendant's business—commonly referred to as "cloud mining"—provides a way for consumers to overcome these barriers and participate in mining.

19.    Defendant sells contracts to consumers under which the consumer pays an up-front fee (plus a daily fee deducted from coins mined) in exchange for "a part of the mining power of hardware hosted and owned" by Defendant.[3] Put differently, Defendant's contracts guarantee its customers a share of the profits generated by Defendant's cryptocurrency mining.[4]

---

[1] Business Insider, "Mining Bitcoin Has Become A Ruthlessly Competitive Business" (Jan. 11, 2015), *available at* http://www.businessinsider.com/mining-bitcoin-is-a-competitive-business-2015-1 (last visited Apr. 11, 2018).

[2] CNBC, "Bitcoin 'mining' goes from enthusiasts to giant enterprises as digital currencies surge" (Aug. 1, 2017), *available at* https://www.cnbc.com/2017/08/01/bitcoin-mining-goes-from-enthusiasts-to-giant-enterprises.html (last visited Apr. 11, 2018) ("[S]pecialized mining sets can cost anywhere from a few hundred to more than $1,000.").

[3] https://hashflare.io/what-is-mining (last visited Apr. 11, 2018).

[4] Defendant has stated in a blog post that it has almost 1.5 million registered users. *Exhibit 1 at 5.* "On average," Defendant claims, "4,000 new users sign up on our website every day…." *Id. at 1.*

**CLASS ACTION COMPLAINT**

20.    Defendant requires little of its customers. Customers only need to log into their HashFlare accounts, purchase a share of computing power, and choose which mining pools they wish to participate in.[5] From there, customers rely solely on the efforts of Defendant to generate profits by owning, housing, operating, and maintaining the computer hardware used for mining. Any payouts from mining are calculated by Defendant and deposited by Defendant into customers' accounts.

21.    Defendant's mining contracts contain four key terms: (1) the cryptocurrency to be mined, (2) the contract's duration, (3) the price for computing power, and (4) the maintenance fee.

22.    At the time Plaintiffs purchased contracts, Defendant offered contracts to mine four different cryptocurrencies. The four cryptocurrencies for which contracts were available were Bitcoin, Litecoin, Ethereum, and Dash.

23.    At the time Plaintiffs purchased contracts, Defendant offered a mix of lifetime contracts and one-year contracts. Consumers could buy a lifetime contract to mine Bitcoin or Litecoin, or a one-year contract to mine Ethereum or Dash.

24.    Defendant's contracts also set a price for a fixed amount of computing power. Computing power for mining is measured in hash per second. A "hash" represents a single attempt to solve the math problem necessary to verify a new block of transactions. Defendant sets prices for cloud mining in terms of hash per second. For example, Defendant charged $1.20 for every 10 billion hash per second at the time Plaintiffs bought their lifetime contracts. Consumers may purchase multiple contracts.

25.    Finally, Defendant's contract sets a "maintenance fee." The amount of the maintenance fee is a function of how much computing power the consumer has

---

[5] A "mining pool" aggregates the computing power of many miners, thereby increasing the chance that the pool will be the first to confirm a block of transactions and receive a payout.

**CLASS ACTION COMPLAINT**

purchased. The maintenance fee is assessed daily against the consumer's profits from that day.

26.    Defendant's Terms of Service contain one additional provision applicable to all contracts. Defendant's contracts are only "valid while profitable."[6] A contract is unprofitable "if the Maintenance and Electricity Fees…become larger than the Payout."[7] "If mining remains unprofitable for 21 consecutive days the Service is permanently terminated…."[8]

### C. PLAINTIFFS' DECISION TO PURCHASE CONTRACTS WITH DEFENDANT

27.    Plaintiffs each purchased at least one lifetime contract with Defendant for Bitcoin mining in August 2017. Under the terms of the contracts, Plaintiffs were charged $1.20 for each 10 billion hash per second of computing power purchased. Baylog paid a total of $85,950 in up-front charges for his lifetime contracts. Marrero paid $1,100 for his contract.

28.    Defendant specifically marketed the lifetime duration of its contracts. HashFlare's homepage, hashflare.io, used the phrase "Lifetime contract" in advertisements for both Bitcoin and Litecoin mining contracts. *See Exhibit 2* at 1.

29.    On the same website, Defendant advertised the availability of an "UNLIMITED TERM CONTRACT" under the headline "OUR FEATURES ARE UNBEATABLE." The advertisement further stated, "There is no time limit, no expiry date. Use our system for however long you would like." *See Exhibit 3*.

---

[6] HashFlare Terms of Service § 5.2, *available at* https://hashflare.io/terms (last visited Apr. 11, 2018).

[7] *Id.* § 5.5.

[8] *Id.*

**CLASS ACTION COMPLAINT**

30.    Additionally, the FAQ section of Defendant's website included a page titled "How long does the contract last?" The answer stated that "SHA-256 and Scrypt contracts last indefinitely…."[9] *See Exhibit 4.*

31.    The lifetime duration of the contract was crucial to Plaintiffs' decision to purchase it. Plaintiffs believed that Bitcoin's value would rise. For that reason, they sought to lock in low mining costs before Bitcoin's value appreciated. Defendant's lifetime contract suited that purpose.

32.    Other cloud mining companies offered lifetime Bitcoin mining contracts with comparable terms at the time Plaintiffs purchased contracts with Defendant. For example, Genesis Mining offered lifetime Bitcoin mining contracts at that time.[10] But for Defendant's false advertising, Plaintiffs would have purchased comparable lifetime mining contracts with a different company.

## D. DEFENDANT'S BREACH OF CONTRACT AND VIOLATION OF CALIFORNIA CONSUMER PROTECTION LAWS

33.    On August 31, 2017, Defendant published the following Facebook post:

Dear users,

The cryptocurrency industry has always been susceptible to a high amount of volatility, and recent global changes have been some of the most significant. Due to an industry-wide hardware deficit, many market participants, especially mining hardware manufacturers, have to adjust their operations, procurements, terms, and prices of ASIC miners and

---

[9] SHA-256 and Scrypt are the software programs used to mine Bitcoin and Litecoin, respectively.

[10] *See* Genesis Mining Customer Service Center, "What does 'Open-Ended' contract mean?" *available at* https://www.genesis-mining.com/customer-service (last visited Apr. 11, 2018) ("The specific duration of an Open-Ended contract is variable…."); Steemit, "Bitcoin cloud mining comparison - Hashflare, Genesis Mining and Hashing 24 - Part I" (July 2016), *available at* https://steemit.com/bitcoin/@doonaberlin/cloud-mining-price-comparison-hashflare-genesis-mining-and-hashing-24-part-1 (last visited Apr. 11, 2018) (comparing the price of HashFlare's lifetime Bitcoin mining contract with the price of similar contracts offered by two other companies as of July 2016).

**CLASS ACTION COMPLAINT**

their delivery.

Per Section 5 of Hashflare Terms of Service (https://hashflare.io/terms), SHA-256 and Scrypt contracts are now also subject to change. The changes, which mainly cover the terms and the prices of the contracts will become effective on September 1, 2017.

The new price for 10 GH/s of SHA-256 will be $2.40, while 1 MH/s of Scrypt will now cost $11.50. The maintenance & electricity fee will remain the same.

All new SHA-256 and Scrypt contracts will be issued for a limited term of 1 year from the moment of activation. All SHA-256 and Scrypt contracts activated prior to 01.09.2017 will expire on 31.08.2018.

*See Exhibit 5*. Essentially, Defendant announced that its lifetime contracts would now expire on August 31, 2018, and all new contracts would have a one-year term. Additionally, Defendant doubled the price of its Bitcoin mining product, raising the price of 10 billion hash per second of computing power from $1.20 to $2.40.

34. Notably, Defendant did not claim that mining had become unprofitable. Instead, Defendant blamed the change on "an industry-wide hardware deficit." Nothing in Defendant's Terms of Service permits amending its contracts for that reason. Regardless of any difficulty Defendant encountered in acquiring new hardware, Plaintiffs had already purchased shares of Defendant's *existing* computing power for life.

35. In its announcement, Defendant claimed that "Section 5" of its Terms of Service permitted the contract amendment. Defendant presumably was referring to Section 5.6 of its Terms of Service, which states that "HashFlare reserves the right to change the launch date, Contract Term and/or Mining Term of any Contract." This provision is illusory and unenforceable. *See Asmus v. Pac. Bell*, 23 Cal. 4th 1, 16 (2000) ("[A]n unqualified right to modify or terminate the contract is not enforceable.").

**CLASS ACTION COMPLAINT**

36. Defendant's cancellation of its lifetime contracts was a pure cash grab, motivated by Bitcoin's precipitous rise in value. On February 21, 2015—the day HashFlare began offering lifetime contracts—one Bitcoin was worth $217.12.[11] On May 1, 2017—a few months before Defendant breached its contracts—the value of one Bitcoin had increased more than sixfold to $1,402.08.[12] By August 31, 2017, when Defendant made its announcement, the value of one Bitcoin had skyrocketed to $4,764.87.[13] Customers with lifetime mining contracts captured all of this rapidly increasing profit margin, and would have continued to do so indefinitely had Defendant not canceled the contracts. By breaching its lifetime contracts, Defendant sought to become free to ratchet up prices for computing power and rake in money that should be going to its customers.

37. Defendant's cancellation of its lifetime contracts also violated California consumer protection laws. Defendant advertised "lifetime contract[s]" with an "unlimited term," guaranteeing that customers could "[u]se our system for however long you would like." *See Exhibits 2-4*. Yet, in its Facebook post, Defendant stated that the cancellation was permissible because Defendant's Terms of Service made the contracts "subject to change."

38. Defendant's Facebook post shows that Defendant did not intend to honor its lifetime guarantee. Instead, Defendant believed that it could change or cancel any term of its contracts at any time. Despite that belief, Defendant repeatedly advertised that purchasers of lifetime contracts could "[u]se our system for however long you would like."

39. Defendant knowingly misled consumers in violation of several California consumer protection laws as set forth herein.

**E. DEFENDANT'S VIOLATION OF THE SECURITIES ACT OF 1933**

---

[11] https://www.coindesk.com/price.

[12] *Id.*

[13] *Id.*

**CLASS ACTION COMPLAINT**

40.   The Securities and Exchange Commission has classified cloud mining contracts as securities under the Securities Act of 1933. *See Securities and Exchange Commission v. Garza et al.*, 2015 WL 7732649 (D. Conn. 2015), Complaint at 20 ("Hashlets constitute investment contracts, and thus 'securities' under Section 2(a)(1) [15 U.S.C. § 77b(1)] of the Securities Act.").

41.   HashFlare's customers invest money with the company with the expectation of generating profits through HashFlare's operations. HashFlare's founder and CEO, Sergei Potapenko, has described the company's customers as "invest[ing]" money and seeking a "RoI" [return on investment].[14]

42.   Defendant's actions described herein demonstrate a disregard for the purchasers of these novel securities. This is precisely the type of misconduct that Congress sought to avoid when it enacted the Securities Act of 1933. As the Supreme Court has stated:

> The fundamental purpose undergirding the Securities Acts is to eliminate serious abuses in a largely unregulated securities market. In defining the scope of the market that it wished to regulate, Congress painted with a broad brush. It recognized the virtually limitless scope of human ingenuity, especially in the creation of countless and variable schemes devised by those who seek the use of the money of others on the promise of profits, and determined that the best way to achieve its goal of protecting investors was to define the term 'security' in sufficiently broad and general terms so as to include within that definition the many types of instruments that in our commercial world fall within the ordinary concept of a security.

*Reves v. Ernst & Young*, 494 U.S. 56, 60-61 (1990) (citations and internal quotation marks omitted).

---

[14] *See* CoinTelegraph, "HashFlare" (Sept. 1, 2015), *available at* https://cointelegraph.com/news/hashflare (last visited Apr. 11, 2018).

**CLASS ACTION COMPLAINT**

43.     The registration requirement of the Securities Act of 1933 is critical to the Act's effectiveness. *See Pinter v. Dahl*, 486 U.S. 622, 638 (1988) ("The registration requirements are the heart of the Act, and § 12(1) imposes strict liability for violating those requirements.").

44.     Given the dubious history of cloud mining contracts,[15] it is especially important for companies like Defendant to comply with the Securities Act's registration requirements.

45.     Neither Defendant nor any other person registered Defendant's securities with the SEC.

## CLASS ALLEGATIONS

46.     Plaintiffs bring this action as a class action pursuant to Federal Rule of Civil Procedure 23.

47.     Plaintiffs assert their claims in Counts I-IV for (1) violation of the CLRA, (2) violation of the CFAL, (3) violation of the CUCL, and (4) unjust enrichment/restitution on behalf of a proposed "California Class," defined as follows:

> All full-year or partial-year residents of California who purchased a lifetime contract for a share of Defendant's computing power at any time between April 11, 2015 and August 31, 2017.

48.     Plaintiffs assert their breach of contract claim in Count V on behalf of a "Contract Class," defined as follows:

> All full-year or partial-year residents of the United States who purchased a lifetime contract for a share of Defendant's computing power at any time between April 11, 2014 and August 31, 2017.

---

[15] *See, e.g.*, SEC, "SEC Obtains Final Judgment Against Two Bitcoin Mining Companies" (June 5, 2017), *available at* https://www.sec.gov/litigation/litreleases/2017/lr23852.htm (last visited Apr. 11, 2018) (describing judgment under, *inter alia*, the Securities Act of 1933 against companies operating fraudulent cloud mining business); 99 Bitcoins, "Cloud Mining – Profitable or an Evolution of a Scam?" (Oct. 13, 2017), *available at* https://99bitcoins.com/cloud-mining-profitable-just-evolution-scam/ (last visited Apr. 11, 2018) ("[M]ost of the cloud mining companies are plain Ponzi schemes.").

49.     Plaintiffs assert their federal securities claim in Count VI on behalf of a proposed "Investor Class," defined as follows:

> All full-year or partial-year residents of the United States who purchased a lifetime contract for a share of Defendant's computing power at any time on or after April 11, 2017.

50.     **Numerosity**: The members of the Classes are so numerous that joinder is impractical. While the exact number and identification of Class members is unknown to Plaintiffs at this time, the Classes are ascertainable through discovery and are believed to number in the thousands or more.

51.     **Commonality**: There are numerous questions of law and fact common to the Classes, which predominate over any individual issues that theoretically may exist. Among the many questions of law and fact common to the Classes are:

    a.  Whether Defendant's conduct described herein was unfair;

    b.  Whether Defendant's conduct described herein was unlawful;

    c.  Whether Defendant's conduct described herein was fraudulent;

    d.  Whether Defendant's conduct described herein was deceptive and/or misleading;

    e.  Whether Defendant's conduct described herein violated the CLRA;

    f.  Whether Defendant's conduct described herein violated the CFAL;

    g.  Whether Defendant's conduct described herein violated the CUCL;

    h.  Whether Defendant's conduct described herein violated the Securities Act of 1933;

    i.  Whether Defendant has been unjustly enriched by its conduct;

    j.  Whether Defendant has committed an anticipatory breach of contract;

    k.  The proper measure of monetary relief; and

    l.  The proper form of any declaratory or injunctive relief.

**CLASS ACTION COMPLAINT**

52.     **Typicality**: Plaintiffs' claims are typical of other Class members. Plaintiffs and other Class members must prove the same facts in order to establish the same claims, which apply to all Class members.

53.     **Adequacy**: Plaintiffs are adequate representatives of the Classes because they are members of the Classes and their interests do not conflict with the interests of the Class members they seek to represent. Plaintiffs have retained counsel competent and experienced in the prosecution of complex class actions and consumer protection litigation, and together Plaintiffs and their counsel intend to prosecute this action vigorously for the benefit of the Classes. The interests of the Class members will be fairly and adequately protected by Plaintiffs and their counsel.

54.     **Superiority**: A class action is superior to other available methods for the fair and efficient adjudication of this litigation. Individual litigation of the claims of all Class members is impracticable. A class action will allow for the fair, efficient, economical, and consistent adjudication of numerous similar claims. There will be no difficulty in the management of this action as a class action.

55.     **Injunctive and Declaratory Relief**: Defendant has acted or refused to act on grounds generally applicable to the entire Classes, thereby making appropriate final declaratory and injunctive relief with respect to the Classes as a whole.

<u>**CAUSES OF ACTION**</u>

<u>**Count I**</u>

**Violation of the California Consumer Legal Remedies Act ("CLRA")**

**Cal. Civil Code § 1750 *et seq*.**

**(asserted on behalf of the California Class)**

56.     Plaintiffs allege and incorporate by reference the allegations in the preceding paragraphs.

57.     The CLRA prohibits "[a]dvertising goods or services with intent not to sell them as advertised" in "a transaction intended to result or that results in the sale or lease of goods or services to any consumer." Cal. Civ. Code § 1770(a)(9).

**CLASS ACTION COMPLAINT**

58.    Plaintiff and the members of the California Class are "consumers" as defined by California Civil Code § 1761(d).

59.    The products purchased by Plaintiffs and the members of the California Class are "services" as defined by California Civil Code § 1761(b).

60.    Defendant's sales of goods to Plaintiffs and the other members of the California Class are "transactions" as defined by California Civil Code § 1761(e).

61.    Defendant violated the CLRA by advertising goods with the intent not to sell them as advertised in transactions involving the sale or lease of goods to Plaintiffs and other California consumers. As described herein, Defendant repeatedly advertised "lifetime" cloud mining contracts on its website, even though Defendant believed that its Terms of Service permitted cancellation of the these "lifetime" contracts at any time. As soon as it became financially advantageous to cancel these contracts, Defendant did so.

62.    Defendant willingly engaged in this practice and represented to consumers that they could "[u]se our system for however long you would like," even though Defendant intended to cancel the contracts at a time of its choosing.

63.    Plaintiffs and the California Class suffered injuries as a result of Defendant's false advertisements in violation of the CLRA. But for these false advertisements, Plaintiffs and the California Class would not have purchased contracts with Defendant, or would not have paid as much as they did for the contracts.

64.    Plaintiff brings this action for injunctive relief pursuant to Cal. Civ. Code § 1782(d). No less than 30 days after service of this Complaint and their demand for relief, Plaintiffs will amend their Complaint to seek all available damages, restitution, and other relief available under Cal. Civ. Code § 1780(a).

## Count II

**Violation of the California False Advertising Law ("CFAL")**

**Cal. Bus. & Prof. Code § 17500 *et seq*.**

-15-

**CLASS ACTION COMPLAINT**

**(asserted on behalf of the California Class)**

65.    Plaintiffs allege and incorporate by reference the allegations in the preceding paragraphs.

66.    The CFAL prohibits any "untrue or misleading" statement in advertising, including any statement made "over the Internet," which is known to be untrue or misleading, or which by the exercise of reasonable care should be known to be untrue or misleading. Cal. Bus. & Prof. Code § 17500.

67.    As described herein, Defendant's false advertising scheme involved untrue and misleading statements in advertising, which were made on its company website for the purpose of inducing potential customers to purchase its product.

68.    Defendant believed that it could amend the terms of its contracts at any time, and thus knew that its references to "lifetime contracts" and "UNLIMITED TERM CONTRACT[S]" were untrue or misleading. Likewise, Defendant knew that its advertisement that customers could "[u]se our system for however long you would like" was untrue or misleading.

69.    Defendant's untrue and misleading statements as described herein have deceived Plaintiffs and the California Class. But for these untrue and misleading statements, Plaintiffs and the California Class members would not have purchased contracts with Defendant, or would not have paid as much as they did for the contracts.

70.    Pursuant to California Business and Professional Code § 17535, Plaintiffs and the California Class are entitled to restitution for Defendant's violations of the CFAL.

71.    In addition, Plaintiffs and the California Class are entitled to recovery of their costs and reasonable attorneys' fees pursuant to California Code of Civil Procedure § 1021.5 and other applicable authority.

**CLASS ACTION COMPLAINT**

### Count III

### Violation the California Unfair Competition Law ("CUCL")

### Cal. Bus. & Prof. Code § 17200 *et seq.*

### (asserted on behalf of the California Class)

72.    Plaintiffs allege and incorporate by reference the allegations in the preceding paragraphs.

73.    The CUCL prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue, or misleading advertising." Cal. Bus. & Prof. Code § 17200.

74.    Defendant violated the CUCL by marketing contractual terms that it did not intend to honor and by engaging in the acts and practices described herein in the course of its business.

75.    Defendant's acts and practices as described in this Complaint are unlawful, in that they violate (among other things) the CLRA, the CFAL, the Securities Act of 1933, and common law.

76.    Defendant's acts and practices as described in this Complaint also are unfair.  These acts and practices are:

       a.  inconsistent with the statutory authority cited above;

       b.  contrary to clearly-articulated public policy;

       c.  immoral, unethical, oppressive, and unscrupulous; and

       d.  substantially injurious to consumers.

Defendant knows that these acts and practices deceive consumers, but engages in these acts and practices anyway in order to gain unfair advantages and financial benefits in the marketplace.

77.    Defendant's acts and practices as described in this Complaint also are fraudulent. The references to "Lifetime contract[s]" and "UNLIMITED TERM CONTRACT[S]" that Defendant displayed on its website were fictitious, intended to

**CLASS ACTION COMPLAINT**

deceive consumers into purchasing its products, and did deceive consumers into purchasing its products.

78.    Plaintiffs and the California Class have suffered an injury-in-fact and have lost money as a result of Defendant's violations of the CUCL.   But for Defendant's false advertising scheme and its unfair, unlawful, and fraudulent acts and practices, Plaintiffs and the California Class members would not have purchased contracts from Defendant, or would not have paid as much as they did for the contracts.

79.    Pursuant to California Business and Professional Code §§ 17203-04, Plaintiffs and the California Class are entitled to restitution for Defendant's violations of the CUCL.

80.    In addition, Plaintiffs and the California Class are entitled to recovery of their costs and reasonable attorneys' fees pursuant to California Code of Civil Procedure § 1021.5 and other applicable authority.

### Count IV

### Unjust Enrichment/Restitution

### (asserted on behalf of the California Class)

81.    Plaintiffs allege and incorporate by reference the allegations in the preceding paragraphs.

82.    Defendant has been unjustly enriched as a result of the conduct described in this Complaint.

83.    Defendant received a benefit from Plaintiffs and other members of the California Class in the form of payment for products purchased on Defendant's website.

84.    Retention of these benefits by Defendant would be unjust and inequitable because Defendant received these benefits by engaging in a false advertising scheme, and by engaging in the unlawful, unjust, and wrongful acts and practices described in this Complaint.

-18-

**CLASS ACTION COMPLAINT**

85.     The benefits (or at least some portion the benefits) that Defendant received were not legitimately earned, and came at the expense of Plaintiffs and the other members of the California Class.

86.     Defendant knew that its false advertising scheme was unjust, inequitable, and wrongful, but engaged in this scheme anyway in order to gain unfair advantages and reap unearned financial benefits.

87.     Defendant is guilty of malice, oppression, and/or fraud through its willful and conscious disregard for the rights of Plaintiffs and members of the California Class.

88.     Plaintiffs and the California Class are entitled to restitution and disgorgement of all amounts unjustly retained by Defendant, as well as other appropriate relief.

## Count V

### Anticipatory Breach of Contract

### (asserted on behalf of the Contract Class)

89.     Plaintiffs allege and incorporate by reference the allegations in the preceding paragraphs.

90.     Plaintiffs contracted with Defendant to pay an up-front fee, plus daily maintenance fees, in exchange for a share of the cryptocurrency mined by Defendant over the course of Plaintiffs' lifetimes. The contract's primary terms—such as price, maintenance fee, and duration—were listed on Defendant's website, hashflare.io. *See supra ¶¶ 21-30*. The contract's remaining terms were contained in Defendant's Terms of Service, which were also available on Defendant's website.

91.     Plaintiffs have made all contractually-required payments to Defendant.

92.     Less than a year into Plaintiffs' lifetime contracts, Defendant cancelled them. Rather than spanning Plaintiffs' lifetimes, the contracts will now purportedly terminate on August 31, 2018.

**CLASS ACTION COMPLAINT**

93.    Defendant's conduct is an anticipatory breach and a repudiation of its contracts with Plaintiffs and the Contract Class. Defendant's written repudiation of its contract was published on its public Facebook page. Defendant has not retracted its repudiation.

94.    As a result of Defendant's anticipatory breach, Plaintiffs and the members of the Contract Class have suffered damages and a loss in value of their contracts.

## Count VI

### Violation of Sections 5 and 12(a)(1) of the Securities Act of 1933

### (asserted on behalf of the Investor Class)

95.    Plaintiffs allege and incorporate by reference the allegations in the preceding paragraphs.

96.    This Count is brought pursuant to Sections 5 and 12(a)(1) of the Securities Act of 1933, 15 U.S.C. §§ 77e and 77l(a)(1), on behalf of the Class.

97.    Defendant's cloud mining contracts are securities within the meaning of 15 U.S.C. § 77b(a)(1).

98.    Defendant promoted, offered, and sold securities through its website to Plaintiffs and members of the Investor Class.

99.    The funds paid by Plaintiffs and members of the Investor Class were pooled by Defendant in an effort by Defendant to secure a profit for itself and its customers. As a result, Defendant's customers, including Plaintiffs and members of the Investor Class, shared in the risks and benefits of the investment.

100.    Plaintiffs and members of the Investor Class relied and depended upon the expertise and efforts of Defendant to generate mining profits.

101.    Plaintiffs and members of the Investor Class expected that they would receive profits as a result of purchasing contracts with Defendant.

**CLASS ACTION COMPLAINT**

102.   In violation of the Securities Act of 1933, 15 U.S.C. § 77e, when the securities were offered for sale and sold to Plaintiffs, they were not registered with the SEC, 15 U.S.C. § 77f.

103.   Defendant used the instrumentalities of interstate commerce in connection with the offer and sale of its securities.

104.   Defendant is strictly liable to Plaintiffs and members of the Investor Class for the refund of all consideration paid by Plaintiffs to purchase these unregistered securities. 15 U.S.C. § 77l(a)(1).

## PRAYER FOR RELIEF

105.   Wherefore, Plaintiffs Kristopher Baylog and Misael Marrero, individually and on behalf of the Classes, pray for the following relief:

   a. Certification of the proposed Classes pursuant to Federal Rule of Civil Procedure 23;

   b. Appointment of Plaintiffs as Class Representatives for the Classes;

   c. Appointment of Plaintiffs' counsel as Class Counsel;

   d. A declaration that Defendant violated each of the laws that form the basis for Plaintiffs' statutory claims, and that Defendant was unjustly enriched and committed an anticipatory breach of contract by its conduct as described herein;

   e. Monetary damages;

   f. Restitution;

   g. Disgorgement of all monies received by Defendant as a result of the unlawful, unjust, unfair, and deceptive acts and practices described herein;

   h. An injunction enjoining Defendant from continuing the unlawful, unjust, unfair, and deceptive acts and practices described herein;

   i. Pre-judgment and post-judgment interest;

   j. Reasonable attorneys' fees and expenses; and

-21-

**CLASS ACTION COMPLAINT**

k.  Such other further relief that the Court deems just and equitable.

## **DEMAND FOR JURY TRIAL**

106.    Plaintiff and the Classes demand a trial by jury.

Dated: April 11, 2018

**LINDGREN, LINDGREN, OEHM & YOU, LLP**

By: _____/S/_____
Leslie Lindgren, CA Bar No. 93524
leslie@lloylaw.com
4199 Campus Drive, Fifth Floor
Irvine, CA 92612
Phone: (949) 509-6577
Fax: (949) 509-6599

**NICHOLS KASTER, PLLP**
Kai H. Richter, MN Bar No. 0296545*
krichter@nka.com
Mark E. Thomson, MN Bar No. 0398260*
mthomson@nka.com
4600 IDS Center
80 South 8th Street
Minneapolis, MN 55402
Phone: (612) 256-3200
Fax: (612) 338-4878
* pro hac vice motion forthcoming

*Attorneys for Plaintiffs and the Putative Classes*

**CLASS ACTION COMPLAINT**