Alexander Lindgren, CA Bar No. 302797
alexander@lloylaw.com
Leslie B. Lindgren, CA Bar No. 93524
leslie@lloylaw.com
**LINDGREN, LINDGREN, OEHM & YOU, LLP**
4199 Campus Drive, Fifth Floor
Irvine, CA 92612
Telephone: (949) 509-6577
Facsimile: (949) 509-6599

Kai H. Richter, MN Bar No. 0296545*
krichter@nka.com
Matthew H. Morgan, MN Bar No. 0304657*
morgan@nka.com
Robert L. Schug, CA Bar No. 249640
schug@nka.com
Charles A. Delbridge, MN Bar No. 0386639*
cdelbridge@nka.com
Mark E. Thomson, MN Bar No. 0398260*
mthomson@nka.com
**NICHOLS KASTER, PLLP**
80 South 8th Street, Suite 4700
Minneapolis, MN 55402
Phone: (612) 256-3200
Fax: (612) 338-4878
*admitted *pro hac vice*
**Attorneys for Plaintiffs and the Classes**

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| KRISTOPHER BAYLOG and MISAEL MARRERO, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>HASHFLARE LP,<br><br>Defendant. | Case No. 2:18-cv-03043-DDP-PLA<br><br>**PLAINTIFFS' NOTICE OF MOTION, UNOPPOSED MOTION, AND MEMORANDUM OF POINTS AND AUTHORITIES FOR FINAL SETTLEMENT APPROVAL**<br><br>Date: Oct. 18, 2021<br>Time: 10:00 A.M.<br>Courtroom: 9C<br>Judge: Hon. Dean D. Pregerson |

TO THE COURT, AND ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on **October 18, 2021 at 10:00 A.M.**, or as soon thereafter as the matter may be heard, in Courtroom 9C, United States Courthouse, 350 West 1st Street, Los Angeles, CA 90012 before the Honorable Judge Dean D. Pregerson, Plaintiffs Kristopher Baylog and Misael Marrero will, and hereby do, move the Court for an Order granting final approval of the parties' class action settlement.

This Motion is based on: (a) the Memorandum of Points and Authorities for Final Settlement Approval; (b) the Third Declaration of Charles A. Delbridge, submitted herewith; (c) the Declaration of Christopher Longley, submitted herewith; (d) the [Proposed] Order Granting Plaintiffs' Unopposed Motions for Final Settlement Approval and for Attorneys' Fees, Costs, and Class Representative Service Awards;

1    (e) the records, pleadings, and papers filed in this action; and (f) such other
2    documentary evidence or argument as may be requested by the Court.
3    **Statement regarding conference of counsel:**
4        Counsel for the parties conferred before Plaintiffs filed the present motion.
5    Defendant does not oppose the motion.
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

## **TABLE OF CONTENTS**

I.  INTRODUCTION .................................................................................... 1

II. FACTS AND PROCEDURE ................................................................... 1

A. Overview of the Litigation ............................................................. 1

B. The Parties Negotiated an Arms'-Length Settlement with the Help of a
Skilled Mediator ............................................................................. 4

C. Overview of the Settlement Terms................................................. 4

   1.  The Class .................................................................................. 4

   2.  Relief obtained by the Settlement Class ................................. 5

   3.  Release of Claims.................................................................... 6

   4.  Attorneys' Fees, Costs, and Incentive Awards ...................... 6

D. Preliminary Approval, Class Notice, Settlement Administration, and
Reaction of the Class..................................................................... 6

III. ARGUMENT.......................................................................................... 7

A. Standard of Review ........................................................................ 7

B. The Settlement is Fair, Reasonable, and Adequate Under Rule 23 .......... 9

   1.  Class Representatives and Class Counsel have adequately
represented the class............................................................... 9

   2.  The Settlement was the result of arms'-length negotiation ............... 10

   3.  The Settlement provides adequate relief to the Class ......................... 11

   4.  The Settlement is equitable as between class members...................... 12

C. The Settlement is Fair, Reasonable, and Adequate in Light of the
Ninth Circuit Factors ................................................................... 13

   1.  Strength of the Plaintiffs' case............................................. 13

   2.  Risk, expense, complexity, and likely duration of further litigation .. 14

   3.  Risk of maintaining class action status throughout the trial .............. 14

   4.  Amount offered in settlement............................................... 14

   5.  Extent of discovery completed and the stage of the proceedings ....... 15

6.  Experience and views of counsel .........................................................15

7.  Presence of a governmental participant ..............................................16

8.  Reaction of the class members to the proposed settlement.................16

D.  The Settlement Class Should Remain Certified .......................................17

IV. CONCLUSION ..............................................................................................17

PLAINTIFFS' MOTION FOR FINAL SETTLEMENT APPROVAL

# <u>TABLE OF AUTHORITIES</u>

## <u>Cases</u>

*7-Eleven Owners for Fair Franchising v. Southland Corp.*,
    85 Cal. App. 4th 1135 (2000) ................................................................. 16

*Bellinghausen v. Tractor Supply Co.*,
    306 F.R.D. 245 (N.D. Cal. 2015) ........................................................... 10

*Churchill Village, LLC v. General Electric*,
    361 F.3d 566 (9th Cir. 2004) ................................................................. 16

*City of Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974) .................................................................. 13

*Class Plaintiffs v. City of Seattle*,
    955 F.2d 1268 (9th Cir. 1992) ................................................................. 7

*D'Amato v. Deutsche Bank*,
    236 F.3d 78 (2d Cir. 2001) .................................................................... 10

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ............................................................... 12

*In re Apple Computer, Inc. Derivative Litig.*,
    No. C 06-4128 JF (HRL), 2008 WL 4820784 (N.D. Cal. Nov. 5, 2008) ............ 10

*In re Mego Fin. Corp. Sec. Litig.*,
    213 F.3d 454 (9th Cir. 2000), as amended (June 19, 2000) ........................... 11, 15

*In re Pac. Enters. Sec. Litig.*,
    47 F.3d 373 (9th Cir. 1995) ................................................................... 16

*In re Toys R Us-Delaware, Inc.--Fair & Accurate Credit Transactions Act*
*(FACTA) Litig.*,
    295 F.R.D. 438 (C.D. Cal. 2014) ........................................................... 11

*In re: Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*,
    No. 2672 CRB (JSC), 2016 WL 6091259 (N.D. Cal. Oct. 18, 2016) ................. 10

*Linney v. Cellular Alaska P'ship*,
    151 F.3d 1234 (9th Cir. 1998) ............................................................... 13, 15

*Nat'l Rural Telecomm. Coop. v. Directv, Inc.*,
  221 F.R.D. 523 (C.D. Cal. 2004)..............................................................11, 13-16

*Newman v. Stein*,
  464 F.2d 689 (2d Cir. 1972) ...................................................................... 14

*Officers for Justice v. Civil Serv. Comm'n*,
  688 F.2d 615 (9th Cir. 1982) ...................................................................... 13

*Rodriguez v. Kraft Foods Grp., Inc.*,
  No. 1:14-CV-1137-LJO-EPG, 2016 WL 5844378 (E.D. Cal. Oct. 5, 2016) ........ 15

*Rodriguez v. West Publ'g Corp.*,
  563 F.3d 948 (9th Cir. 2009) ...............................................................9, 13

*Turk v. Gale/Triangle, Inc.*,
  No. 2:16-CV-00783-MCE-DB, 2017 WL 4181088 (E.D. Cal. Sept. 21, 2017)... 16

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011)................................................................................... 12

*Wong v. Stoler*,
  237 Cal. App. 4th 1375, 188 Cal. Rptr. 3d 674 (2015),
  *as modified on denial of reh'g* (June 23, 2015) ..................................... 11

## **Statutes, Regulations, Rules**

Fed. R. Civ. P. 23(e) .........................................................................*passim*

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

With the settlement notice period now closed and having received no objections from the more than 3,600 Class Members,[1] Plaintiffs—with Defendant's consent and agreement—request that the Court grant final settlement approval. The Parties' Settlement is fair, reasonable, and adequate. It is the product of arms'-length negotiations conducted with the help of a private mediator by experienced counsel on both sides. The Parties reached settlement only after conducting hard-fought discovery, which included Class Counsel bringing a motion to compel and, after that motion was denied in part, traveling to Belarus to depose Defendant's corporate designee. Further, the Settlement provides significant monetary relief to Settlement Class Members: The Gross Settlement Amount of $225,000 is higher than the Class's potential damages (before interest and attorneys' fees) of $165,154.80. For these reasons, and those discussed herein, the Settlement complies with Rule 23 and attendant case law, and the Court should grant final approval.

## II.    FACTS AND PROCEDURE

The relevant background of the litigation and mediation, and an overview of the Settlement terms, is discussed in the motion for preliminary approval. (ECF No. 75). That background is largely repeated below for the Court's convenience. Additionally, this section includes updated information summarizing settlement administration activities since the Court preliminarily approved the settlement.

## A.    Overview of the Litigation.

Defendant was engaged in the business of selling consumer contracts. (First

---

[1] All capitalized terms have the meaning assigned to them in the parties' Settlement Agreement, unless otherwise specified herein. (*See* Settlement Agreement, ECF No. 79.)

Am. Compl. ("FAC") ¶ 2, ECF No. 38; Am. Answer to FAC ¶ 2, ECF No. 45.) Under these contracts, consumers could purchase a share of Defendant's specialized computing power to "mine" cryptocurrencies such as Bitcoin, and thereby share in the proceeds of such mining. (*Id.*) Defendant advertised and sold some of these contracts as "lifetime contracts." (FAC ¶ 5, ECF No. 38.) On August 31, 2017, Defendant announced that, pursuant to its terms of service, Defendant was changing the term of the lifetime contracts it had sold up to that date, such that these contracts would expire on August 31, 2018. (*Id.*) Plaintiffs allege that they each purchased contracts in reliance on their lifetime terms prior to that announcement. (*Id.* ¶ 4.)

Plaintiffs filed their Complaint on April 11, 2018, and their FAC on September 14, 2018, on behalf of themselves and three putative classes, each consisting of purchasers of Defendant's lifetime cryptocurrency mining contracts. (Compl., ECF No. 1; FAC, ECF No. 38.) Plaintiffs alleged that Defendant's conduct violated California consumer protection laws (Counts I through III); that it unjustly enriched Defendant (Count IV); that it constituted a breach of the lifetime contracts (Count V); and that the contracts were securities which Defendant sold without registration, in violation of the Securities Act (Count VI). (FAC, ECF No. 38.) Defendant, for its part, has consistently and emphatically denied any wrongdoing and has contested Plaintiffs' claims. (*See generally* Am. Answer to FAC, ECF No. 45.)

Plaintiffs proposed three classes. (FAC ¶¶ 47-49, ECF No. 38.) Plaintiffs asserted their consumer protection and unjust enrichments claims (Counts I-IV) on behalf of a putative "California Class," defined as "[a]ll full-year or partial-year residents of California who purchased a lifetime contract for a share of Defendant's computing power at any time between April 11, 2015 and August 31, 2017." (*Id.* ¶ 47.) They asserted their contract claim (Count V) on behalf of a putative "Contract Class," defined as "[a]ll full-year or partial-year residents of the United States who purchased a lifetime contract for a share of Defendant's computing power at any time between April 11, 2014 and August 31, 2017." (*Id.* ¶ 48.) Finally, Plaintiffs asserted

their securities claim (Count VI) on behalf of a proposed "Investor Class," defined as "[a]ll full-year or partial-year residents of the United States who purchased a lifetime contract for a share of Defendant's computing power at any time on or after April 11, 2017." (*Id.* ¶ 49.) Because Defendant did not sell any lifetime contracts after August 31, 2017, (*Id.* ¶ 5; Am. Answer to FAC ¶ 5, ECF No. 45), the Investor Class period ended on that date. As such, the Contract Class is the broadest class, and all members of both the California Class and Investor Class are also members of the Contract Class. Plaintiffs sought relief for the classes and for themselves. (FAC ¶ 106, ECF No. 38.)

Defendant has vigorously and emphatically contested the claims asserted by Plaintiffs and has denied any wrongdoing, starting with the filing of its Answer on October 10, 2018 (ECF No. 39) and its Amended Answer on October 18, 2018 (ECF No. 45). Thereafter, the Parties exchanged extensive written discovery and documents, followed by letters regarding alleged deficiencies in each party's discovery responses. (First Delbridge Decl. ¶ 3, ECF No. 75-1.[2]) In written discovery, Plaintiffs sought the identities of all members of each of the three proposed classes, along with information sufficient to calculate damages for each member. (*Id.* ¶ 8.) In response, Defendant produced 4,099 spreadsheets, showing Class Members' purchases of lifetime contracts. (*Id.*) From these spreadsheets, Plaintiffs were able to calculate classwide damages, as well as damages on an individual basis. (*Id.*)

Plaintiffs brought a motion to compel discovery in July 2019 (ECF No. 65), the parties fully briefed the motion (*see* ECF No. 65-1), and the Court ruled on the motion on August 1, 2019, denying Plaintiffs' motion in part (ECF No. 67). Thereafter, in fall 2019, Plaintiffs' counsel traveled to Minsk, Belarus to depose Defendant's

---

[2] "First Delbridge Declaration" refers to the Declaration of Charles A. Delbridge in support of Plaintiffs' preliminary approval motion (ECF No. 75-1). "Second Delbridge Declaration" refers to the Declaration of Charles A. Delbridge in support of Plaintiffs' motion for attorneys' fees, costs, and service awards (ECF No. 83-1). "Third Delbridge Declaration" refers to the Declaration of Charles A. Delbridge in support of the present motion for final settlement approval.

corporate designee. (First Delbridge Decl. ¶ 4, ECF No. 75-1.) Then in December 2019, Defendant took Plaintiff Baylog's deposition in Los Angeles. (*Id.*)

**B.** **The Parties Negotiated an Arms'-Length Settlement with the Help of a Skilled Mediator.**

The Parties participated in mediation on January 28, 2020 with retired judge Richard A. Stone of Signature Resolution in Los Angeles. (*Id.* ¶ 5.) The parties made significant progress toward settlement, but were unable to reach agreement that day. (*Id.*) Thereafter, with the continuing help of Judge Stone, the parties reached a settlement in principle on February 5, 2020, agreeing on monetary terms. (*Id.*) The parties then continued detailed negotiations and reached agreement on all terms of the Settlement in July, 2020. (*Id.*; *see also* Settlement Agreement, ECF No. 79.) Class Counsel and Plaintiffs believe the Settlement to be fair, reasonable, adequate, and in the best interests of the Class. (First Delbridge Decl. ¶ 7, ECF No. 75-1.)

**C.** **Overview of the Settlement Terms.**

**1.** **The Class**

The Settlement Agreement applies to all members of all three proposed classes, except any who opt out. (Settlement Agreement ¶¶ 28-29, ECF No. 79.) The Settlement Agreement uses more specific language than did the FAC, but defines the Class to include the same individuals as did the FAC:

- All full-year or partial-year residents of California who purchased any contract described with the terms "lifetime contract," "unlimited term contract," and/or "no expiry" (hereinafter "Lifetime Contract") at any time on or after April 11, 2015 and at or before 11:59 p.m. Pacific time on August 31, 2017 (the "California Class");

- All full-year or partial-year residents of the United States who purchased a Lifetime Contract at any time on or after April 11, 2014 and at or before 11:59 p.m. Pacific time on August 31, 2017 (the "Contract Class");

- All full-year or partial-year residents of the United States who purchased a

Lifetime Contract at any time on or after April 11, 2017 (the "Investor Class"). (*Id.* ¶ 28.)

Defendant initially produced 4,099 spreadsheets reflecting Class members' purchase records. (*See* First Delbridge Decl. ¶ 8, ECF No. 75-1.) However, those records contained duplicates, leaving 3,644 account records. (Third Delbridge Decl. ¶ 3.) And the Settlement Administrator determined that some Class Members had more than one account; in those instances, the multiple accounts were combined into one record. (Longley Decl. ¶ 4.) All told, there are 3,627 Class Members. (*Id.*)

## 2.    Relief obtained by the Settlement Class

The Class's damages, before interest, total $165,154.80. (First Delbridge Decl. ¶ 8, ECF No. 75-1.) Under the Settlement, Defendant will contribute a Gross Settlement Amount of $225,000 to a common fund. (Settlement Agreement ¶¶ 18, 31, ECF No. 79.) There will be no reversion to Defendant. (*Id.*) If approved by the Court, the Gross Settlement Amount will be reduced by payment of service awards to the Named Plaintiffs ($15,000.00 each); Class Counsel's attorneys' fees ($67,500.00) and litigation expenses ($38,196.23); and the expenses of settlement administration ($18,590.00). (*Id.* ¶ 20; *see also* Motion for Attorneys' Fees, Costs, and Class Representative Service Award, ECF No. 83.) The amount remaining is the "Net Settlement Fund," which will be distributed among the Settlement Class. (*See* Settlement Agreement ¶ 20, ECF No. 79.) The Net Settlement Fund will be distributed among class members pro rata, weighted in proportion to each Settlement Class Member's damages. (*Id.* ¶ 32.) Each class member's damages will be valued at the higher of their contract damages (also called "expectancy" damages), or restitution damages. (*Id.*) The distributions will be based on data produced by Defendant and calculated by Class Counsel. (*Id.*) If the Court awards attorneys' fees, class representative service awards, litigation expenses, and administration expenses in the amounts requested, the average (mean) distribution to Settlement Class Members will be $19.41. (Third Delbridge Decl. ¶ 4.)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### 3. Release of Claims

In exchange for the relief provided by the settlement, all class members will release all claims relating to the matters alleged in the case. (Settlement Agreement ¶¶ 24, 42, ECF No. 79.)

### 4. Attorneys' Fees, Costs, and Incentive Awards

The Settlement requires Class Counsel to file their Motion for Attorneys' Fees and Costs and Class Representative Service Payments at least fourteen days before the deadline for objections to the proposed settlement. (*Id.* ¶ 48.) Accordingly, Class Counsel filed their motion on August 16, 2021, fourteen days before the Objections Deadline of August 30. (*See* Motion for Attorneys' Fees, Costs, and Class Representative Service Award, ECF No. 83; *see also* Settlement Agreement ¶¶ 38, 21, ECF No. 79 (requiring Email Notice to be sent within 21 days following preliminary approval and setting the objection deadline for 60 days following Email Notice.)) Consistent with the Settlement Agreement, Class Counsel seeks thirty percent of the Gross Settlement Amount ($67,500.00), plus litigation costs and settlement administration expenses. (Motion for Attorneys' Fees, Costs, and Class Representative Service Award, ECF No. 83; *see also* Settlement Agreement ¶¶ 34, 21, ECF No. 79.) Class Counsel has requested their out-of-pocket litigation costs of $38,196.23, plus the expected $18,590.00 to be charged by the Settlement Administrator for administering the Settlement. (Motion for Attorneys' Fees, Costs, and Class Representative Service Award, ECF No. 83.) Consistent with the Settlement, Class Counsel has also requested service awards of $15,000 to each of the two Class Representatives, Mr. Baylog and Mr. Marrero. (*Id.*)

### D. Preliminary Approval, Class Notice, Settlement Administration, and Reaction of the Class.

On June 9, 2021, the Court preliminarily approved the Settlement. (ECF No. 82.) By the same Order, the Court approved the Parties' agreed upon Email and Long Form Notices, approved the proposed manner of distribution, and appointed Atticus

1    Administration, LLC as the Settlement Administrator. (*Id.*)

2    As required by the Settlement, the Settlement Administrator sent the Email

3    Notice to class members on June 30, 2021, and created the Settlement Website, which

4    went "live" the same day. (Third Delbridge Decl. ¶ 5; Longley Decl. ¶¶ 6, 8.)[3]

5    Plaintiffs' Motion for Attorneys' Fees, Costs, and Class Representative Service

6    Award was published to the website on the morning of August 17, the day after it was

7    filed. (Third Delbridge Decl. ¶ 6.)

8    The Settlement Agreement set the Objections Deadline and Opt-Out Deadline

9    for August 30, 2021. (*See* Settlement Agreement ¶¶ 38, 21, ECF No. 79.)[4] Notably,

10   **no** Class Member has objected to the Settlement, and only **one** has opted out of the

11   Settlement. (Longley Decl. ¶ 10.)

## III.   ARGUMENT

13   The Court should approve the settlement because it is fair, reasonable, and

14   adequate. Each of the factors to be considered—both under Rule 23 and under Ninth

15   Circuit caselaw—favor approval.

### A.   Standard of Review.

17   Rule 23(e) of the Federal Rules of Civil Procedure requires judicial approval

18   of class action settlements, and whether to approve a settlement is "committed to the

19   sound discretion of the trial judge." *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268,

20   1276 (9th Cir. 1992). There is a "strong judicial policy that favors settlements,

21   particularly where complex class action litigation is concerned." *Id.*

22   A class settlement must be "fair, reasonable, and adequate," which, after the

---

[3] Between the Email Notice and the Long Form Notice, the Settlement Administrator was able to successfully send notice to 3,566 of the Class Members, which equates to 98.31% of the Class. (Longley Decl. ¶¶ 6-7.)
[4] The Preliminary Approval Order issued on June 9, 2021. (ECF No. 82.) The Settlement Agreement requires Email Notice to be sent within 21 days following preliminary approval, or June 30. (*See* Settlement Agreement ¶ 38, ECF No. 79.) Additionally, the Settlement Agreement set the Objections Deadline and Opt-Out Deadline for 60 days following Email Notice, or August 29. (*Id.* ¶ 21.) A day was added because August 29 fell on a Sunday, pushing those deadlines to August 30.

2018 amendments to Rule 23(e)(2), requires consideration of whether:

> A) the class representatives and class counsel have adequately represented the class;
>
> B) the proposal was negotiated at arms' length;
>
> C) the relief provided for the class is adequate, taking into account:
>
>> i) the costs, risks, and delay of trial and appeal;
>>
>> ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>>
>> iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>>
>> iv) any agreement required to be identified under Rule 23(e)(3); and
>
> D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

The 2018 amendments to Rule 23(e) were not intended to "displace any factor [developed under Circuit case law], but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendment. In the Ninth Circuit, the factors a court considers in approving a class settlement are:

> [1] the strength of plaintiffs' case; [2] the risk, expense, complexity, and likely duration of further litigation; [3] the risk of maintaining class action status throughout the trial; [4] the amount offered in settlement; [5] the extent of discovery completed, and the stage of the proceedings; [6] the experience and views of counsel; [7] the presence of a governmental participant; and [8] the reaction of the class members to the proposed settlement.

1  *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 963 (9th Cir. 2009).

2      Here, the proposed settlement is fair, reasonable, and adequate, and all Rule 23

3  and Ninth Circuit factors favor approval.

4  **B.    The Settlement is Fair, Reasonable, and Adequate Under Rule 23.**

5      Each of the Rule 23(e) factors favor granting final approval.

6  **1.    Class Representatives and Class Counsel have adequately**

7      **represented the class.**

8      Throughout the three-and-a-half-year pendency of this case, the Class has been

9  well represented both by engaged class representatives and by experienced and

10 knowledgeable counsel. This factor supports approval of the settlement. *See* Fed. R.

11 Civ. P. 23(e)(2)(A).

12     First, as noted in both the preliminary approval motion and motion for fees,

13 Plaintiffs Baylog and Marrero worked diligently throughout this case's pendency, and

14 for months before that during counsel's investigation. (Preliminary Approval Motion

15 at 9-10, ECF No. 75; Motion for Attorneys' Fees, Costs, and Class Representative

16 Service Award at 4, ECF No. 83.) They have remained in frequent contact with

17 counsel, aided in the preparation and review of pleadings, responded to written

18 discovery (including time-consuming searches for documents and ESI), participated

19 in settlement discussions, and, for Plaintiff Baylog, prepared, traveled, and sat for

20 deposition. The proposed class representatives have faithfully discharged their

21 responsibilities.

22     So, too, has Class Counsel. As detailed in previous briefs and supporting

23 documents, Counsel are knowledgeable and experienced both in complex class

24 litigation and in the nascent law of cryptocurrency. (*See* Preliminary Approval Motion

25 at 10, ECF No. 75; Motion for Attorneys' Fees, Costs, and Class Representative

26 Service Award at 10-11, ECF No. 83; Declarations, ECF Nos. 75-1, 75-4; Firm

27 Resume, ECF No. 75-3.) Further, no Class Members have objected to the Settlement,

28 and only one has opted out, indicating overwhelming satisfaction among the Class

with the work done and result obtained by Plaintiffs and Class Counsel. This factor favors approval.

### 2.    The Settlement was the result of arms'-length negotiation.

In evaluating a settlement for approval, a court "first considers 'the means by which the parties arrived at settlement.'" *In re: Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, No. 2672 CRB (JSC), 2016 WL 6091259, at *10 (N.D. Cal. Oct. 18, 2016) ("*Volkswagen*"). Final approval is appropriate if the settlement was the result of "good faith, arms-length negotiations," and not the result of collusion between counsel. *See, e.g., Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 258 (N.D. Cal. 2015).

Here, the Settlement was the product of serious negotiation, aided by respected mediator Judge Richard A. Stone (ret.). A mediator's participation weighs considerably against any inference of collusion. *See !In re Apple Computer, Inc. Derivative Litig.*, No. C 06-4128 JF (HRL), 2008 WL 4820784, at *3 (N.D. Cal. Nov. 5, 2008); *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (a "mediator's involvement in pre-certification settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure."). Further, the parties' negotiation was well-informed because those negotiations happened only *after* Plaintiffs' counsel both traveled to Belarus to depose Defendant's corporate representative and received and analyzed the Class's damages data with the help of its internal damages analyst. Finally, the settlement was the result of non-collusive negotiation: Attorneys' fees and service payments for the Class Representatives were not negotiated until the Gross Settlement Amount had been agreed upon. (Settlement Agreement ¶¶ 33-34, ECF No. 79.)[5] As this Settlement is the result of arms'-length negotiations by experienced counsel with the aid of a mediator, this factor favors final

---

[5] Aside from the filed Settlement Agreement (ECF No. 79), there is no "agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C)(iv). (*See* Third Delbridge Decl. ¶ 7.)

1  approval of the Settlement.

2  **3.    The Settlement provides adequate relief to the Class.**

3  The Gross Settlement Amount of $225,000 provides adequate redress for the

4  Class's damages, which total $165,154.80 before interest and attorney fees. *See Nat'l*

5  *Rural Telecomm. Coop. v. Directv, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004) ("it is

6  well-settled law that a proposed settlement may be acceptable even though it amounts

7  to only a fraction of the potential recovery"); *see also In re Toys R Us-Delaware, Inc.-*

8  *-Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 454 (C.D.

9  Cal. 2014) (approving settlement representing 5% to 30% of the recovery the class

10  might have obtained); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir.

11  2000), as amended (June 19, 2000) (finding fair and adequate a settlement one-sixth

12  of potential recovery).

13  Further, the adequacy of a settlement is informed by the risks that the class may

14  not get or stay certified, and that it may lose on the merits. *See* Fed. R. Civ. P.

15  23(e)(2)(C)(i) (settlement adequacy must "tak[e] into account . . . the costs, risks, and

16  delay of trial and appeal"). Here, settlement was reached only after Plaintiffs

17  performed in-depth discovery and damages analysis, but still early in the litigation.

18  Plaintiffs reached settlement before having to face the risk of losing an opposed class

19  certification motion; or losing on the merits at summary judgment, trial, or appeal.

20  Each of these is a significant obstacle, and the fact that the settlement avoids these

21  obstacles militates in favor of approving it.

22  Settlement adequacy is also judged based on its ability to provide relief to the

23  class. Fed. R. Civ. P. 23(e)(2)(C)(ii). Here, the Contract Class includes within it all

24  members of both of the other classes. And the damages available to the Contract Class

25  are the broadest of the three classes, including either restitution or expectancy

26  damages. *See Wong v. Stoler*, 237 Cal. App. 4th 1375, 1384, 188 Cal. Rptr. 3d 674,

27  680 (2015), *as modified on denial of reh'g* (June 23, 2015) ("A party to a contract has

28  two different remedies when it has been injured by a breach . . . . [it may] recover

1  damages resulting from the rescission . . . . [or it may] recover damages for breach of

2  contract or fraud." (citations omitted)). By measuring each Class Member's damages

3  as the higher of their restitution or expectancy damages, and paying them a pro rata

4  portion of those damages, the Settlement provides effective relief to the Class.

5        Finally, settlement adequacy takes into account "the terms of any proposed

6  award of attorney's fees." Fed. R. Civ. P. 23(e)(2)(C)(iii). Here, Plaintiffs have

7  requested an award of thirty percent of the Gross Settlement Amount, which is

8  $67,500.00. (Motion for Attorneys' Fees, Costs, and Class Representative Service

9  Award, ECF No. 83.) As Plaintiffs demonstrated in their motion, their request is

10  reasonable, and it should be granted. Further, the reasonableness of Plaintiffs' fee

11  request demonstrates the adequacy of the Settlement generally.

12        The proposed Settlement provides adequate relief to the Class; it should be

13  approved.

14        **4.     The Settlement is equitable as between class members.**

15        The final fairness factor is whether "the [settlement] proposal treats class

16  members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). Under this

17  factor, treating similarly situated class members disparately may be an indication of

18  unfairness. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998),

19  *overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011)

20  ("There was no disparate treatment between class members; all stood to benefit

21  equally, a fact which lessens the likelihood that the named plaintiffs and their

22  attorneys colluded with [defendant] to increase their own recovery at the expense of

23  the unnamed plaintiffs."). Here, the determination of settlement payments is uniform

24  among all members of the Settlement Class. Each Settlement Class Member is to

25  receive a pro rata share of the higher of their restitution or expectancy damages. This

26  is equitable as between the Class Members as it gives each the benefit of an

27  assumption that her best claim could have been proved on the merits. In other words,

28  the settlement does not treat members of any one subclass better than members of any

1    other subclass.

2          The proposed settlement should be approved because it satisfies each of the

3    Rule 23(e)(2) fairness factors.

4    **C.    The Settlement is Fair, Reasonable, and Adequate in Light of the Ninth**

5          **Circuit Factors.**

6          Courts in the Ninth Circuit consider the eight factors enumerated above in

7    determining the fairness, reasonableness, and adequacy of proposed class action

8    settlements. *Nat'l Rural Telecommunications Coop.*, 221 F.R.D. at 525 (C.D. Cal.

9    2004). Not all factors will be applicable, and assessing the weight to afford any

10   particular factor is within the district court's discretion; sometimes "one factor alone

11   may prove determinative in finding sufficient grounds for court approval." *Id.* Here,

12   each applicable factor favors approving the Settlement.

13         **1.    Strength of the Plaintiffs' case**

14         In determining whether a settlement is fair, adequate, and reasonable, the Court

15   may consider the strength of the plaintiff's case and the amount offered in settlement,

16   among other factors. *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir.

17   1998). "Ultimately, the district court's determination is nothing more than 'an

18   amalgam of delicate balancing, gross approximations, and rough justice,'" and there

19   is no single "formula" to be applied; rather, the Court may presume that the parties'

20   counsel and the mediator arrived at a reasonable range of settlement by considering

21   Plaintiffs' likelihood of recovery. *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d

22   615, 625 (9th Cir. 1982) (quoting *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 468

23   (2d Cir. 1974)); *Rodriguez*, 563 F.3d at 965.

24         Here, Plaintiffs believe in the strength of their case, but acknowledge the risks

25   of continuing to litigate (as discussed further below). The fact that the Gross

26   Settlement Amount exceeds the Class's damages, before interest and attorneys' fees,

27   reflects the strength of the case. Given the risks, the Settlement is a very reasonable

28   alternative to continued litigation. This factor favors approval.

**2.** **Risk, expense, complexity, and likely duration of further litigation**

Courts recognize an inherent "range of reasonableness" in determining whether to approve a settlement "which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972); *see Nat'l Rural Telecomm. Coop.*, 221 F.R.D. at 527 (C.D. Cal. 2004) (settlement may be acceptable even where it is "only a fraction of the potential recovery"). Given the risks of continued litigation, the proposed Settlement is squarely within the "range of reasonableness." The risks are particularly pronounced here, because Defendant has expressed doubt over its continued solvency and ability to withstand a larger judgment. (Third Delbridge Decl. ¶ 8.) Further, Defendant is a foreign company (FAC ¶ 10, ECF No. 38), and collecting a judgment from it may have been difficult for that reason. The fact that Class Counsel had to travel to Belarus to depose Defendant demonstrates that reality. Litigation is inherently risky, but continued litigation in this case is particularly so. This factor supports settlement approval.

**3.** **Risk of maintaining class action status throughout the trial**

The Parties reached settlement before Plaintiffs were required to make a contested certification motion. The fact that, but for settlement, Plaintiffs would risk having their certification motion denied weighs in favor of the settlement. *Cf. Nat'l Rural Telecommunications Coop.*, 221 F.R.D. at 527 (maintaining certification through trial is likely where certification was granted pre-settlement, the case settled on the eve of trial, and Defendant had never challenged certification). This factor favors granting the present motion.

**4.** **Amount offered in settlement**

As noted above, the amount offered in settlement—$225,000—exceeds the Class's damages before deductions for fees, service awards, litigation costs, and costs of administration. After these deductions in the amounts requested, there will be $70,713.77 remaining for distribution to the Settlement Class, which is 42.8% of the

total damages. This factor therefore favors settlement approval. *See Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) ("The fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved.") The Settlement is reasonable also because Class Counsel devoted significant effort to reach an understanding of the Class's damages, which is no trivial feat given that certain of those damages accrued in cryptocurrency rather than in United States dollars. (First Delbridge Decl. ¶ 8, ECF No. 75-1.) Through Plaintiffs' counsel's efforts, including the work of their in-house damages analyst, Plaintiffs were able to value the Class's losses and clearly analyze settlement. This, too, militates in favor of approval. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000), *as amended* (June 19, 2000) (the fact that "Class Counsel had worked with damages and accounting experts throughout the litigation" favored approval of the settlement).

### 5.    Extent of discovery completed and the stage of the proceedings

As detailed above and in the preliminary approval motion and attorneys' fees motion, Plaintiffs' counsel have aggressively investigated and litigated this case. That aggressive litigation includes moving to compel Defendant's corporate representative to sit for deposition in this District. *See* ECF No. 65. When that motion to compel was denied in part, *see* ECF No. 67, Plaintiffs' counsel traveled to Minsk, Belarus to depose Defendant. Plaintiffs' discovery efforts militate in favor of approval. *Rodriguez v. Kraft Foods Grp., Inc.*, No. 1:14-CV-1137-LJO-EPG, 2016 WL 5844378, at *8 (E.D. Cal. Oct. 5, 2016) ("Courts require that parties conduct sufficient discovery to be able to make an informed decision about the value and risks of the action and come to a fair settlement.").

### 6.    Experience and views of counsel

"[T]he recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation," is accorded "[g]reat weight." *Nat'l Rural*

1    *Telecomm. Coop*, 221 F.R.D. at 528; *see also Turk v. Gale/Triangle, Inc.*, No. 2:16-

2    CV-00783-MCE-DB, 2017 WL 4181088, at *3 (E.D. Cal. Sept. 21, 2017). This is

3    because "[p]arties represented by competent counsel are better positioned than courts

4    to produce a settlement that fairly reflects each party's expected outcome in the

5    litigation." *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995). Therefore,

6    "the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its

7    own judgment for that of counsel." *Nat'l Rural Telecomm. Coop*, 221 F.R.D. at 528.

8    Here, Class Counsel—experienced in complex class litigation—believe the

9    Settlement to be fair, reasonable, adequate, and in the Class's best interests. (First

10   Delbridge Decl. ¶ 7, ECF No. 75-1.) And Defendant's counsel does not oppose this

11   motion. As such, this factor favors final approval.

12        **7.**    **Presence of a governmental participant**

13       Since there is no governmental participant in this case, this factor weighs

14   neither in favor of, nor against, approval. *Nat'l Rural Telecommunications Coop.*, 221

15   F.R.D. at 528 ("There is no governmental participant in this Class Action. As a result,

16   this factor does not apply to the Court's analysis.").

17        **8.**    **Reaction of the class members to the proposed settlement**

18       A low number of opt-outs and objections is a strong indicator that a settlement

19   is fair and reasonable. *7-Eleven Owners for Fair Franchising v. Southland Corp.*, 85

20   Cal. App. 4th 1135, 1152-53 (2000) (class response favorable where "[a] mere 80 of

21   the 5,454 national class members elected to opt out [(1.5% of the entire Class)] and . .

22   . . [a] total of nine members . . . objected to the settlement); *Churchill Village, LLC v.

23   General Electric*, 361 F.3d 566, 577, 580 (9th Cir. 2004) (affirming settlement

24   approval where 45 of approximately 90,000 notified class members objected and 500

25   opted out).

26       Here, not a single Class Member has objected and only one Class Member has

27   opted out. That lone opt-out represent less than 0.03% of the Class. The Class's

28   positive response to the Settlement is strong indication of its fairness and

1  reasonableness. The Settlement should be approved.

2  **D.      The Settlement Class Should Remain Certified.**

3      Finally, for all the reasons stated in Plaintiffs' Motion for Preliminary Approval

4  (ECF No. 75) and the Court's Preliminary Approval Order (ECF No. 82), the

5  Settlement Class should remain certified for the purposes of this Settlement.

6  **IV.    CONCLUSION**

7      For the above reasons, Plaintiffs request the Court grant their motion, approve

8  the Settlement, and adopt the accompanying proposed Order.

9

10      Respectfully submitted,

11

12  Dated: September 13, 2021        **NICHOLS KASTER, PLLP**

13                  By:  /s/Charles A. Delbridge
                    Matthew H. Morgan, MN Bar No. 0304657*
14                  morgan@nka.com
                    Kai H. Richter, MN Bar No. 0296545*
15                  krichter@nka.com
                    Robert L. Schug, CA Bar No. 249640
16                  schug@nka.com
                    Charles A. Delbridge MN Bar No.0386639*
17                  cdelbridge@nka.com
                    Mark E. Thomson, MN Bar No. 0398260*
18                  mthomson@nka.com
                    4700 IDS Center
19                  80 South 8th Street
                    Minneapolis, MN 55402
20                  Phone: (612) 256-3200
                    Fax: (612) 338-4878
21                  *admitted *pro hac vice*
22
                    **LINDGREN, LINDGREN, OEHM &**
23                  **YOU, LLP**
24                  Alexander Lindgren, CA Bar No. 302797
                    alexander@lloylaw.com
25                  Leslie B. Lindgren, CA Bar No. 93524
26
27
28

-17-

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

leslie@lloylaw.com
4199 Campus Drive, Fifth Floor
Irvine, CA 92612
Phone: (949) 509-6577
Fax: (949) 509-6599

*Attorneys for Plaintiffs and the Putative
Classes*